IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT LYNN PRIDGEN | § | |
| v. | § | CIVIL ACTION NO. 6:17cv128 |
| DIRECTOR, TDCJ-CID | § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT

The Petitioner Robert Pridgen, proceeding through retained counsel Randy Schaffer, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. This Court referred the matter to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Pridgen was charged with the murder of Paul Rohne. According to the opinion of the Twelfth Judicial District Court of Appeals, Pridgen called 911 at 1:25 a.m. on the morning of January 27, 2009, to tell them he had shot Rohne, explaining that Rohne had been attacking him. Law enforcement personnel found no sign of a struggle; instead, Rohne was sitting on a love seat, slumped over, with his ankles crossed. He had a tight grip on his glasses with his left hand and no grip at all on a knife that was in his right hand. Rohne also had a blood alcohol level of .33 and bruises on his face, arms, and legs as well as a fatal shotgun wound to his chest. One of the

investigating officers, Sgt. Foster, testified that he believed the scene had been staged because of Rohne's loose grip on the knife, but the forensic pathologist, Dr. Van Dusen, testified that there was nothing significant about the fact that Rohne had a tighter grip on his glasses and his right hand was loose and open around the knife.

Pridgen's first trial resulted in a hung jury, but on retrial, he was convicted and sentenced to 20 years in prison. He took a direct appeal, arguing that the evidence established his claim of self-defense as a matter of law and that the trial court abused its discretion in excluding evidence of Rohne's sexual proclivities, but the Twelfth Court of Appeals affirmed Pridgen's conviction. *See* Pridgen v. State, slip op. no. 12-13- 00136-CR, 2014 WL 6792583 (Tex.App.-Tyler, December 3, 2014, pet. ref'd). Pridgen's petition for discretionary review was refused by the Texas Court of Criminal Appeals on June 17, 2015.

Pridgen then sought state habeas corpus relief, contending that he received ineffective assistance of counsel when his trial attorney, Jeff Haas, failed to object to certain testimony, failed to file a motion in limine, failed to object to the exclusion of photographs, and failed to enter phone records into evidence. The trial court secured an affidavit from Haas and entered findings of fact and conclusions of law on January 4, 2017. Pridgen filed objections to these findings and conclusions, but on February 1, 2017, the Court of Criminal Appeals denied the state habeas application without written order. Pridgen then filed his federal habeas corpus petition.

## II. The Federal Habeas Petition

Pridgen argued that: (1) counsel failed to object to Sgt. Foster's opinion that Pridgen had planted a knife in Rohne's hand after the shooting; (2) counsel failed to impeach Sgt. Foster's opinion about Pridgen allegedly planting the knife and Dr. Van Dusen's opinion that Rohne had died

some two to three hours before the paramedics arrived with their prior inconsistent testimony; (3) counsel failed to file a motion in limine and object to repeated references by the prosecutors and witnesses to the deceased as "the victim;" and (4) counsel failed to offer telephone records to show that Pridgen and his brother did not speak to each other before or after Pridgen called 911. The Director filed a response arguing that Pridgen failed to establish that the state court's rejection of his claims was objectively unreasonable. Pridgen filed a reply to this response.

### III. The Report of the Magistrate Judge and the Petitioner's Objections

The Magistrate Judge issued a Report setting out the standards for habeas corpus review, explaining that the petitioner must show that the state court's adjudication of his claim resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). This is a highly deferential standard for evaluating state court rulings, demanding that state court decisions be given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

The Magistrate Judge also set out the standards applicable to claims of ineffective assistance of counsel. In order to prevail on such a claim, a state prisoner seeking federal habeas corpus relief must show that his attorney's performance was deficient and that the deficiency prejudiced him to the point that he was denied a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This means that the habeas petitioner must establish both that (1) counsel's performance was deficient in that it fell below an objective standard of reasonable

competence and (2) the deficient performance so prejudiced the defense that the outcome of the trial was unreliable and there is a reasonable probability that, but for counsel's performance, the result of the trial would have been different. Unless a petitioner makes both showings, he is not entitled to relief. *Del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007).

A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. This requires a substantial, not merely a conceivable, likelihood of a different result. *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).

The Magistrate Judge observed that under these standards, counsel has wide latitude in making tactical decisions, including formulating a strategy which was reasonable at the time. *Harrington v. Richter*, 562 U.S. 86, 107, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This means, for example, that it is reasonable trial strategy for counsel to try to cast "pervasive suspicion of doubt [rather] than to try to prove a certainty that exonerates." *Id*. at 109.

A conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness. *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689-90.

Furthermore, the Magistrate Judge stated that according to the Supreme Court, the standards created by *Strickland* and 28 U.S.C. §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. *Harrington*, 562 U.S. at 105. Application of this doubly deferential review is different from asking whether defense counsel's performance fell below the *Strickland* standard, because the question is not whether the federal court believes that the state court's determination under *Strickland* was incorrect, but whether that determination was unreasonable - a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 173 L.Ed.3d 251 (2009).

Consequently, the Fifth Circuit has stated that even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable; rather, in order to obtain habeas corpus relief, the petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Druery v. Thaler*, 647 F.3d 535, 539 (5th Cir. 2011).

The state court found that Haas' actions in not filing a motion in limine or objecting to references to Rhone as a victim, the failure to subpoena the phone records, and the decisions concerning the cross-examination of Sgt. Foster were based on legitimate trial strategy or legal reasoning. In his reply to the Respondent's answer in the federal habeas proceeding, Pridgen argued that the state habeas findings were "woefully inadequate" because the state court purportedly excluded him from the state habeas proceedings by entering the findings of fact and conclusions of law without allowing him to respond to, or even see, Haas' affidavit. He urged that the district court "should not defer to findings of fact and conclusions of law entered in this manner."

5

However, the Magistrate Judge stated that the only means by which a federal court can ignore state court factfinding is when the petitioner rebuts the presumption of correctness by clear and convincing evidence. A full and fair hearing in state court is not a precondition to applying the presumption of correctness to the state court findings of fact, *Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001), nor is it a prerequisite for deference to legal determinations. *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010). Instead, the federal court can resolve the claim without the deference that the law requires if the state court's adjudication of the claim is dependent upon an antecedent unreasonable application of federal law. *See Panetti v. Quarterman*, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007).

The Magistrate Judge stated that although Pridgen complained of the procedures employed by the state habeas court, he made no attempt to rebut these findings by clear and convincing evidence, nor did he show that the state court's adjudication of his claims was based upon an antecedent unreasonable application of federal law. Thus, because the state habeas court denied relief on the merits of his claims, Pridgen must show that the state court's adjudication of his claim resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on a unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The Magistrate Judge concluded that Pridgen failed to make such a showing and recommended that the petition for federal habeas corpus relief be denied. The Magistrate Judge also recommended that Pridgen be denied a certificate of appealability *sua sponte*. Pridgen filed objections which specifically addressed the Magistrate Judge's proposed findings and conclusions

6

concerning his claims that counsel was ineffective for failing to impeach Sgt. Foster and Dr. Van Dusen with their testimony from the first trial.

A. Failure to Impeach Sgt. Foster

The Magistrate Judge then discussed each of Pridgen's claims individually. At trial, Sgt. Foster testified that he believed the knife had been placed into Rohne's hand, presumably by Pridgen in an effort to make it look like he had been defending himself. Although Dr. Van Dusen testified that Rohne's grip or lack of grip on the knife had no significance, the prosecutor nonetheless argued in closing that the evidence showed the knife had been planted in Rohne's hand.

Pridgen asserted that Haas was ineffective in failing to impeach Sgt. Foster's opinion because Haas failed to elicit the fact that Foster had not expressed this opinion at the first trial. Haas' affidavit stated, and the state habeas court found, that Haas' decisions concerning Sgt. Foster's testimony were legitimate trial strategy because he believed that Dr. Van Dusen's testimony undercut Sgt. Foster's credibility. The Magistrate Judge concluded that Pridgen failed to overcome the high deference given to state court findings and failed to show that the state court's rejection of this claim was unreasonable. In addition, the Magistrate Judge stated that Pridgen failed to meet the *Strickland* standard in that he did not show that but for Haas' actions in this regard, the result of the proceeding would probably have been different.

In his objections, Pridgen asserted that the state court ignored the issue. He claimed that "the jury probably would have rejected Foster's opinion (and the prosecutor's arguments) that the knife was planted had it known that Foster did not express this opinion at the first trial when he described how Rohne held the knife." He took issue with the Magistrate Judge's statement that challenging Foster about his failure to offer an opinion on planting the knife at the first trial could have carried

some risks and claimed that the Magistrate Judge "ignores the prosecutor's arguments emphasizing Foster's belief that petitioner planted the knife."

The relevant finding of fact by the state habeas court reads as follows: "Trial counsel decisions concerning the cross-examination of Investigator Foster and/or Dr. Dusen [sic] were a legitimate trial strategy. Trial counsel believed upon his cross-examination of Investigator Foster that such cross-examination had destroyed Investigator Foster's credibility with the jury."

The state court found that Haas' decisions concerning his cross-examination of Foster - necessarily including the question of cross-examining Foster regarding his testimony at the first trial - were legitimate trial strategy. In order to prevail in his federal habeas corpus petition, Pridgen must show that the state court's adjudication of this claim resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on a unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. §2254(d).

In construing this standard, the Supreme Court has explained that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. If such disagreement is possible, the petitioner's claim must be denied; the standard is difficult to meet "because it was meant to be." *Id.* at 102.

In this case, Pridgen has failed to show that the state court's adjudication of this claim resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on a unreasonable determination of the facts in light of the evidence presented in the state court

proceeding. Nor has he shown that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Druery*, 647 F.3d at 539. The question is not whether this Court finds the state court's determination under *Strickland* to be incorrect, but whether that determination was unreasonable. *Knowles*, 556 U.S. at 123. Pridgen has not met this standard. His first objection is without merit.

B. Failure to Impeach Dr. Van Dusen Concerning the Time of Death

Pridgen complains that Haas was ineffective for failing to impeach Dr. Van Dusen with his testimony from the first trial concerning the time of death. At the first trial, Dr. Van Dusen testified that Rohne could have been dead for as little as 25 minutes, but at the retrial, he said it could be as long as two hours. Pridgen argued that Haas should have impeached the doctor with his testimony from the first trial regarding the time of death.

On direct examination, Dr. Van Dusen stated that "with that information [i.e. about the room temperature, the skin mottling, and the blood coagulation], I would say that the person has probably been deceased for maybe as much as a couple of hours." (Docket no. 12-3, p. 3). He added that the time of death could be up to two hours earlier and that he would expect it to be longer than 25 minutes. (Docket no. 12-3, p. 4).

On cross-examination, Haas got Dr. Van Dusen to acknowledge that it was not possible to come in and say that someone had been dead for "42 ½ minutes." Haas asked "you can't tell this jury that Mr. Rohne had been deceased 30 minutes, 40 minutes, an hour. You can't do that, can you?" to which Dr. Van Dusen replied "no." Haas then asked "so, 30 minutes is just as consistent as an hour or two hours?" Dr. Van Dusen replied "for the most part, yes, it would be within the

9

realm of reality, yes." Haas continued "okay, fair statement. Okay. The mottling, expect to see that within minutes. The coagulation, you expect to see that within minutes. Temperature, okay. You know. Half hour - 25 minutes, half hour, to a couple of hours, correct?" Dr. Van Dusen replied "Uh-huh. Yes." (Docket no. 12-3, pp. 7-8).

In his objections, Pridgen highlights two other portions of Dr. Van Dusen's testimony, occurring after the exchanges set out above. In these other portions discussed by Pridgen, Dr. Van Dusen testified that he did not recall saying that the time of death was somewhere between 30 minutes and two hours, and acknowledged that he did not know if the time frame could be two hours or 30 or 40 minutes. (Docket no. 13-1, p. 19; 13-2, p. 9).

Pridgen argues that "Haas did not elicit that Van Dusen previously testified about the time of death, much less show him the transcript and compel him to admit that he testified that Rohne could have been dead for as little as 25 minutes before the paramedics arrived. Thus, the record does not support the magistrate judge's conclusion that 'Dr. Van Dusen's testimony does not appear to have differed significantly from the evidence he provided in the first trial ...' Report at 14. Additionally, Van Dusen's testimony at the retrial that he could not determine the exact time of death does not support the magistrate judge's conclusion that Haas 'was able to get [him] to admit that 30 minutes was a reasonable timeline for the time of death.' Id."

As set out above, Haas asked Dr. Van Dusen if 30 minutes would be just as consistent as an hour or two hours, to which the doctor replied "for the most part, yes, it would be within the realm of reality, yes." When Haas asked "half hour - 25 minutes, half hour, to a couple of hours, correct?" Dr. Van Dusen replied "Uh-huh. Yes." This testimony supports the Magistrate Judge's conclusion that Haas was able to get Dr. Van Dusen to admit that 30 minutes was a reasonable time frame, and

10

Pridgen fails to show how impeaching him with prior testimony that Rohne could have been dead for 25 minutes, rather than 30, could have made a substantial difference in the jury's deliberations.

The state habeas court found that "trial counsel obtained the evidence he sought from Dr. Dusen [sic] as part of his overall trial strategy, namely that there was no exact time of death." (Docket no. 15-12, p. 4). The finding that there was no exact time of death identified by Dr. Van Dusen is plainly supported by the record, given the doctor's testimony that the time of death could range anywhere from half an hour earlier to two hours earlier.

The state habeas court thus effectively found that Haas' actions were legitimate trial strategy. Pridgen has not shown that the state court's adjudication of this claim resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court, or resulted in a decision based on a unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Because Pridgen has not shown that the state court's determination was unreasonable, his claim for federal habeas corpus relief founders on the shoals of 28 U.S.C. §2254(d). *See Sexton v. Beaudreaux*, 138 S.Ct. 2555, 2558-59, 201 L.Ed.2d 986 (2018). Pridgen's objections are without merit.

Pridgen also requests that a certificate of appealability issue. However, he has not shown that the issue of whether the state court's determination was reasonable is debatable among jurists of reason, that a court could resolve this question in a different manner, or that the question is adequate to deserve encouragement to proceed further. Consequently, he is not entitled to a certificate of appealability.

**IV. Conclusion**

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Petitioner objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Petitioner's objections are without merit. It is accordingly

**ORDERED** that the Petitioner's objections are overruled and the Report of the Magistrate Judge (docket no. 18) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled application for the writ of habeas corpus is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that the Petitioner Robert Lynn Pridgen is **DENIED** a certificate of appealability *sua sponte*. Finally, it is

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED.**

So **ORDERED** and **SIGNED April 21, 2019.**

_____
Ron Clark, Senior District Judge